UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

MAYEN BIAR DIING,

        Petitioner,        Case No. 1:09-cv-1058

v.        Honorable Janet T. Neff

CAROL R. HOWES,

        Respondent.
_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Petitioner Mayen Biar Diing pleaded guilty in the Kent County Circuit Court on May 28, 2008 to one count of operating a motor vehicle under the influence of liquor (OUIL) causing death, MICH. COMP. LAWS § 257.625(4), and one count of OUIL causing serious injury, MICH. COMP. LAWS § 257.625(5). On June 25, 2008, Petitioner was sentenced to respective prison terms of six to fifteen years and one-and-one-half to five years. In his *pro se* petition, Petitioner raises two grounds for relief, as follows:

    I.    THE COURT OF APPEALS ERRED IN DENYING PETITIONER'S MOTION TO WITHDRAW HIS PLEA WHEN HE WAS UNDER THE FALSE IMPRESSION ABOUT HIS SENTENCE AND WAS HEAVILY SEDATED ON PAIN MEDICATION WHEN HE PLEAD[ED] GUILTY TO THE CHARGES.

    II.    PETITIONER DIING IS ENTITLED TO RESENTENCING BECAUSE HE WAS CONSTRUCTIVELY DENIED THE "EFFECTIVE" ASSISTANCE OF COUNSEL DURING A CRITICAL STAGE[] OF THE SENTENCING PROCEEDINGS AND HIS ORIGINAL SENTENCE WAS VALID AND SHOULD NOT HAVE BEEN SET ASIDE OR VACATED.

(Attach. E to Am. Pet., docket #11-6, Page ID##78-79.) Respondent has filed an answer to the petition (docket #16) stating that the grounds should be denied because they are without merit. Upon review and applying the AEDPA standards, I find that Petitioner's claims are without merit. Accordingly, I recommend that the petition be denied.

## Procedural History

### A. Trial Court Proceedings

The state prosecution arose from a head-on collision caused by Petitioner while he was legally drunk. Petitioner was charged with one count of OUIL causing death, MICH. COMP. LAWS § 257.625(4), and one count of OUIL causing serious injury, MICH. COMP. LAWS § 257.625(5). In addition, Petitioner was charged with one count of driving on a suspended license causing death, MICH. COMP. LAWS § 257.904(4), and one count of driving on a suspended license causing serious injury, MICH. COMP. LAWS § 257.904(5). Petitioner waived his preliminary examination, and the case was bound over to the Kent County Circuit Court on April 16, 2008. Petitioner, through an interpreter, pleaded guilty on May 8, 2008 to one count of OUIL causing death and one count of OUIL causing serious injury.[1] The other two counts were dismissed.

On June 24, 2008, a sentencing hearing was held. Petitioner, through counsel, moved to withdraw his plea, indicating that Petitioner needed to consult with yet-to-be-retained counsel about the collateral effects of his plea on his immigration status. (6/24/08 Sentencing Transcript (S. Tr. I) 4, docket #21.) The court held that Petitioner's request to withdraw his plea did not meet the

---

[1] Although a Dinka-speaking interpreter was present and available to Petitioner at the plea hearing, Petitioner expressly stated on the record that he understood (S. Tr. I at 4-5), and the remainder of the record confirms that Petitioner had substantial ability to speak and understand English.

standard for withdrawing a plea, which required a showing that such a remedy would be in the interest of justice because of newly discovered evidence or actual innocence. (*Id.* at 4-5.)

The sentencing proceeding continued with the introduction of victim impact statements. During his own opportunity for allocution, Petitioner reiterated that he had been unable to communicate with an immigration attorney while detained at the jail. Petitioner also stated that, at the time of his plea, he "was on medication. I was taking medicine. I was on [sic] pain by my foot." (*Id.* at 11.) Petitioner claimed that, because he was in pain and on medication, he made a "mistake" in entering a guilty plea. (*Id.*) He also apologized to the family, but stated that the incident was purely an accident. The court noted that the accident was precipitated by Petitioner's decision to drive drunk and that Petitioner had been convicted of drunk driving on two prior occasions. (*Id.* at 12-13.) The sentencing information report (SIR) that had been submitted to both the court and the parties showed a sentencing guidelines range of 12 to 24 months, which the court observed was "remarkably low." (*Id.* at 14.) Based on that SIR, the court sentenced Petitioner to a prison term of 20 months to 15 years. (*Id.*)

The following day, June 25, 2008, Petitioner was returned to the court for resentencing. The court explained that an error had occurred in the submission of the SIR:

> THE COURT: . . . This case was before the Court for sentencing as one of 18 cases heard yesterday afternoon. The record will reflect that, at the time of the sentencing, I observed that the guideline range of 12 to 24 months seemed unusually low.
>
> The directions, or instructions more precisely, in the Sentencing Guidelines manual provide that:
>
>> "When an offender is convicted of multiple offenses, a sentencing information report (SIR)," in other words, guideline

- 3 -

>   scoring, "should be completed for the sentencing offense that has the highest crime class." Unquote.
>
>   For reasons that are not immediately clear, the probation department apparently scored both the lowest crime class case, the operating while intoxicated causing serious injury, and the higher criminal class, operating while intoxicated causing death.
>
>   However, the probation department, in sending the report on to counsel and the Court, did not attach the SIR for the more serious charge. They attached only the SIR for the less serious charge. Seeing one SIR in the file, and being aware of the instructions, the Court was of the opinion that the guidelines for the most serious offense were 12 to 24.
>
>   Very short[ly] after having pronounced sentence and having expressed some surprise at the leniency of those guidelines as attached, counsel approached the Court and indicated that this appears to be an SIR for the lesser offense, and that an SIR for the greater offense was not attached.
>
>   Court staff immediately contacted Probation by means of e-mail, and Probation faxed over the correct SIR, which we received about a half an hour after recessing the sentencing in that matter yesterday.
>
>   We asked that the defendant be brought back up while we still had everybody present. However, the Sheriff's department had already transported him back to the county jail.
>
>   We, therefore, recessed the proceedings until this morning for the purposes of explaining what transpired, and rectifying the error.
>
>   We now all have the correct SIR of the offense of operating while intoxicated causing death. Not surprisingly, the guidelines are higher than 12 to 24. They are, in fact, 43 to 86. All parties now have the correct SIR, and the Court, therefore, should proceed to resentence Mr. Diing as to the more serious charge of operating while intoxicated causing death.

(6/25/08 Sentencing Tr. (S. Tr. II) at 3-5, docket #22.)

Thereafter, the Court engaged in further colloquy, and Petitioner was asked again if he had more to say before being resentenced. Petitioner made the following statement:

- 4 -

>        THE DEFENDANT:  I didn't, you know, I'm confused about this case, you know.  Yesterday, I told you that I need to hire my own attorney, and your appeals for me to hire an attorney.  You say you're going to appeal, but that appeal also is going to cost money.  So, this case, seeing I was in jail, I have been restricted.
>
>        You know, even my people have been restricted to visit me.  Even my letters are always in block by the cop and everything.  So I don't know what is going on in this case.
>
>        Yesterday I have been sentenced.  My attorney told me that you have been – they give you, like two to fifteen years, and before that say 43 to 86 months.  So, this case – anyway, I don't know what to say about this case.
>
>        But whatever you will sentence me, you will sentence me about it, but I will still appear for this case because yesterday I told you that I don't mean this, but this, in detail, this accident is just not only not my car, you know, but you called the accident a drunk, but there are a lot of cars involved in the accident.
>
>        But I didn't do all that, sir, seeing I was not drunk now.  So, if you say that you're going to bring me back, and that's what I know, you know, because I know that that's – and I know that because yesterday these people with a trick, you know.  They just made me plead guilty on it but that was growing, you know.
>
>        But they treat me yesterday, nothing I would say, I would still care about this one.

(*Id.* at 6-7.)  The court sentenced Petitioner on the OUIL causing death conviction to a prison term of six to fifteen years and left the sentence for the OUIL causing serious injury at a term of one-and-one-half to five years.

### B.     Direct Appeal

Petitioner filed an application for leave to appeal to the Michigan Court of Appeals. His brief, which was filed by counsel on September 30, 2008, presented the same two issues raised in this application for habeas corpus relief.  (*See* Def.-Appellant's Br. on Appeal, docket #23.)  In an order issued on October 28, 2008, the Michigan Court of Appeals denied leave to appeal for lack of merit in the grounds presented.  (*See* 10/28/08 Mich. Ct. App. Order (MCOA Ord.), docket #23.)

Petitioner filed a pro per application for leave to appeal to the Michigan Supreme Court. Petitioner raised the same two claims raised before and rejected by the Michigan Court of Appeals. He also raised two new state-law claims, neither of which he has raised in his habeas petition. By order entered March 23, 2009, the Michigan Supreme Court denied his application for leave to appeal because it was not persuaded that the questions presented should be reviewed. (*See* Mich. Ord., docket #24.)

## Standard of Review

This action is governed by the Antiterrorism and Effective Death Penalty Act, PUB. L. 104-132, 110 STAT. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Bailey*, 271 F.3d at

655; *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000).  The inquiry is "limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time [the petitioner's] conviction became final."  *Onifer v. Tyszkiewicz*, 255 F.3d 313, 318 (6th Cir. 2001); *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).

A decision of the state court may only be overturned if (1) it applies a rule that contradicts the governing law set forth by the Supreme Court, (2) it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result; (3) it identifies the correct governing legal rule from the Supreme Court precedent but unreasonably applies it to the facts of the case; or (4) it either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend a principle to a context where it should apply.  *Bailey*, 271 F.3d at 655 (citing *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694; *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  *Williams*, 529 U.S. at 411; *accord Bell*, 535 U.S. at 699.  Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable."  *Id.* at 410.

Where the state appellate court has issued a summary affirmance, it is presumed to have been made on the merits, and a federal court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA.  *See Harrington v. Richter*, 131 S. Ct. 770, 784 (2011).  However, where other circumstances indicate that the state court has not addressed the

merits of a claim, the court conducts *de novo* review. *See Richter*, 131 S. Ct. at 785 (noting that the presumption that the state-court's decision was on the merits "may be overcome when there is reason to think some other explanation for the state court's decision is more likely"); *Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question); *Maples v. Stegall*, 340 F.3d 433, 437 (6th Cir. 2003) (recognizing that *Wiggins* established *de novo* standard of review for any claim that was not addressed by the state courts).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster*, 324 F.3d at 429; *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989). Applying the foregoing standards under the AEDPA, I find that Petitioner is not entitled to relief.

## Discussion

### I. Denial of Motion to Withdraw the Plea

A state defendant has no constitutionally guaranteed right to withdraw a guilty plea. *See Carwile v. Smith*, 874 F.2d 382 (6th Cir. 1989). The only constitutional challenge that a habeas court may entertain with regard to a plea of guilty is that the plea was not entered in a knowing and voluntary fashion under the standards set forth in *Boykin v. Alabama*, 395 U.S. 238 (1969). A habeas court is restricted to these federal principles, and may not grant habeas relief on the basis of state law governing the taking or withdrawal of guilty pleas. *Riggins v. McMackin*, 935 F.2d 790, 794-95 (6th

Cir. 1991). Consequently, the question whether petitioner should have been allowed in the court's discretion to withdraw his guilty plea under state-court rules is not reviewable in habeas corpus.

Petitioner contends that his guilty plea was not knowing, voluntary or intelligent because he was under the influence of pain medication at the time he pleaded guilty. He also alleges that he was induced to plead guilty by his lawyer's misrepresentation that he would be sentenced to a prison term of two to fifteen years.

The test for determining a plea's validity is "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). A plea not voluntarily and intelligently made has been obtained in violation of due process and is void. *See McCarthy v. United States*, 394 U.S. 459, 466 (1969). In order to find a plea constitutionally valid, several requirements must be met. The defendant pleading guilty (or no contest) must be competent, *see Brady v. United States*, 397 U.S. 742, 756 (1970), and must have notice of the nature of the charges against him, *see Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976); *Smith v. O'Grady*, 312 U.S. 329, 334 (1941). The plea must be entered "voluntarily," i.e., not be the product of "actual or threatened physical harm," "mental coercion overbearing the will of the defendant," *Brady*, 397 U.S. at 750, or "state-induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel," *Matthew v. Johnson*, 201 F.3d 353 (5th Cir. 2000). *See Machibroda v. United States*, 368 U.S. 487, 493 (1962) ("A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void."). The defendant also must understand the consequences of his plea, including the nature of the constitutional protections he is waiving. *Henderson*, 426 U.S. at 645 n.13; *Brady*, 397 U.S. at 755; *Machibroda*,

368 U.S. at 493.  Finally, the defendant must have available the advice of competent counsel. *Tollett*, 411 U.S. at 267-68; *Brady*, 397 U.S. at 756.  The advice of competent counsel exists as a safeguard to ensure that pleas are voluntarily and intelligently made. *Cf. Henderson*, 426 U.S. at 647 ("[I]t may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit."); *Brady*, 397 U.S. at 754 (suggesting that coercive actions on the part of the state could be dissipated by counsel).

In the instant case, Petitioner was sworn under oath, and the trial court engaged in a lengthy colloquy concerning Petitioner's understanding of the charges, the content of the plea agreement, whether Petitioner was promised anything or coerced in any manner to enter the plea, and the rights Petitioner would be waiving by entering the plea. (Plea Tr. at 4-7.)  Petitioner expressly acknowledged under oath that he understood the charges, the maximum sentence, and the content of his plea agreement.  He also expressly denied being made other promises or being coerced.  (*Id.*)  At no time during the colloquy did Petitioner appear to be confused about any portion of the proceedings.  Indeed, at several points, Petitioner demonstrated a particularly clear understanding of the proceedings.  For example, when the prosecutor represented that Petitioner's blood test had shown a blood alcohol percentage of .13,  Petitioner disagreed, stating that the only test he was given showed a blood alcohol content of .08.  (*Id.* at 9.)  For purposes of the plea, the court accepted Petitioner's admission of .08 percent.  (*Id.* at 9-10.)  Petitioner also explained that, while he was responsible for hitting the first car, multiple cars were involved in the accident, and he was unsure which vehicle victims were in.  (*Id.* at 11-12.)  At the end of the hearing, the trial court found as follows:

> THE COURT: I believe that Mr. Diing is represented by capable counsel; that his plea is freely, voluntarily, knowingly, and intelligently proffered; and I believe his statements in response to questioning by the Court provide a factual basis which would enable a finder of fact to conclude that he is guilty of the offenses to which he is pleading.
>
> I'll direct that the pleas be accepted to Counts 1 and 3 of the Information pursuant to the plea agreement . . . .

(*Id.* at 13.)

The trial court's determination of voluntariness is presumed to be correct unless Petitioner rebuts that presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Garcia v. Johnson*, 991 F.2d 324, 326-27 (6th Cir. 1993) (holding that state court findings regarding the propriety of the plea are accorded the presumption of correctness if the record otherwise supports those findings). Here, Petitioner has presented no facts that would support his contention, much less facts that would be sufficient to rebut the presumption of correctness. Petitioner relies only on his sweeping statement during sentencing that he had been on pain medication when he entered his guilty plea. At no time has Petitioner clarified what medication he was taking or at what dosage. Similarly, he has failed to specify the exact symptoms he was experiencing. Such general allegations unsupported by particular evidence fall far short of the clear and convincing evidence necessary to rebut the trial court's findings. *See Hoffman v. Jones*, 53 F. App'x 342, 343 (6th Cir. 2002) (rejecting petitioner's claim that guilty plea was involuntary because he was under the influence of prescription medication).

Petitioner's alternative claim is equally meritless. Petitioner claims that he was induced to plead guilty by defense counsel's misrepresentation about the length of his likely

sentence. In support of this claim, Petitioner points only to the following passage from the second sentencing hearing:

> Yesterday I have been sentenced. My attorney told me that you have been – they give you, like two to fifteen years, and before that say 43 to 86 months. So, this case – anyway, I don't know what to say about this case.

(S. Tr. II at 6.) Contrary to Petitioner's claim, the statement on which Petitioner relies makes no reference to Petitioner's understanding at the time he entered his plea. Indeed, the statement explicitly refers to Petitioner's understanding that the outcome of the first sentencing hearing was substantially less than what his attorney had originally told him to expect.

Moreover, as previously discussed, Petitioner expressly denied at the plea hearing that he had been promised anything other than the plea agreement summarized in open court. (Pl. Tr. at 8.) Under settled Sixth Circuit authority, Petitioner's responses to the trial judge, given under oath at the plea hearing, preclude his present assertion that counsel assured him of a lower sentence. In *Baker v. United States*, 781 F.2d 85 (6th Cir. 1986), the trial court inquired concerning the terms of any plea bargain, received a response from the prosecutor on the record, and received denials from defense counsel, the prosecutor, and the defendant concerning the existence of any other terms. The Sixth Circuit held that where the trial court has scrupulously followed the required procedure, "the defendant is bound by his statements in response to that court's inquiry." 781 F.2d at 90 (quoting *Moore v. Estelle*, 526 F.2d 690, 696-97 (5th Cir. 1976)); *see also Smith v. Anderson*, 632 F.3d 277, 282 (6th Cir. 2011); *Ramos v. Rodgers*, 170 F.3d 560, 566 (6th Cir. 1999). In sum, neither the facts nor the law support Petitioner's position.

Further, Petitioner is not entitled to an evidentiary hearing on either issue. Following enactment of the AEDPA, federal habeas courts have limited discretion to take new evidence in an

evidentiary hearing. *See Cullen v. Pinholster*, 131 S. Ct. 1388, 1400-01 (2011); *see also Sheppard v. Badley*, 657 F.3d 338, 343 (6th Cir. 2011). Under 28 U.S.C. § 2254(e)(2), if an applicant has failed to develop a record in state court, a federal court on habeas review may grant a hearing only when the petitioner can demonstrate both of the following:

(A) the claim relies on

  (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

  (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

*Id.* Moreover, where the issue was adjudicated on the merits in the state court proceedings, the Supreme Court has held that federal habeas corpus "review under § 2254(d)(1) is limited to the record that was before the state court . . . ." *Pinholster*, 131 S. Ct. at 1398. In such circumstances, a federal habeas court is barred from holding an evidentiary hearing. *Id.*

Petitioner has wholly failed to demonstrate the necessary diligence in developing a the factual predicate for his claim. 28 U.S.C. § 2254(e)(2)(A)(ii). Petitioner did not file a written motion or supporting affidavits at the time he moved to withdraw his plea. Indeed, the oral motion presented to the trial court sought to withdraw the plea solely on the grounds that Petitioner needed to investigate the immigration consequences of his plea. After the sentencing, Petitioner made no attempt to seek a hearing in the trial court on the voluntariness of his plea. In addition, Petitioner did not file a motion with the court of appeals seeking a remand for an evidentiary hearing. As a

result, because he has not demonstrated the necessary diligence in developing his claim, Petitioner fails to meet the prerequisites for granting an evidentiary hearing in this Court. *See* 28 U.S.C. § 2254(e)(2)(A)(ii)  Moreover, because the state appellate courts rejected his claim on the merits, Petitioner is barred from an evidentiary hearing in this habeas proceeding. *Pinholster*, 131 S. Ct. at 1398.

        II.        Ineffective Assistance of Counsel

In his second ground for habeas relief, Petitioner contends that he was constructively denied the effective assistance of counsel during a critical stage of the proceedings when, following the first sentencing hearing, defense counsel advised the court of the sentencing error, which resulted in Petitioner being resentenced to a substantially higher minimum sentence on the OUIL-causing-death conviction.

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed

at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691. Moreover, as the Supreme Court has observed, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011) (citing *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420 (2009)); *Premo v. Moore*, 131 S. Ct. 733, 740 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

The *Strickland* standard is applied to most claims challenging the effectiveness of counsel. However, an actual denial of counsel during a critical stage of the proceeding amounts to a per se denial of the effective assistance of counsel. *See United States v. Cronic*, 466 U.S. 648 (1984). In such circumstances, the court must reverse a criminal defendant's conviction "without any specific showing of prejudice to defendant when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding." *Id.* at 659 n.25. "In other words, when counsel is totally absent during a critical stage of the proceedings, prejudice must be presumed." *Mitchell v. Mason*, 325 F.3d 732, 741 (6th Cir. 2003).

In *Bell v. Cone*, 535 U.S. 685 (2002), the Supreme Court delineated the differences between claims governed by *Strickland* and claims governed by *Cronic*. *Henness v. Bagley*, 644 F.3d 308, 323-24 (6th Cir. 2011) (citing *Bell*, 535 U.S. at 695-96; *Ivory v. Jackson*, 509 F.3d 284, 294 (6th Cir. 2007); *Mitchell*, 325 F.3d at 742). If a claim is governed by *Strickland*, a defendant typically must demonstrate that specific errors made by trial counsel affected the ability of the

- 15 -

defendant to receive a fair trial. If a claim is governed by *Cronic*, however, the defendant need not demonstrate any prejudice resulting from the lack of effective counsel. *Mitchell*, 325 F.3d at 742 (citing *Bell*, 535 U.S. at 695). Three types of cases warrant the presumption of prejudice: (1) when the accused is denied the presence of counsel at a critical stage; (2) when counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing"; and (3) when counsel is placed in circumstances in which competent counsel very likely could not render assistance. *Henness*, 644 F.3d at 323 (citing *Bell*, 535 U.S. at 695-96); *see also Ivory*, 509 F.3d at 294; *Mitchell*, 325 F.3d at 742. The third type of case arises only in cases "of such magnitude that 'the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial.'" *Henness*, 644 F.3d at 323 (quoting *Bell*, 535 U.S. at 695-96).

Here, Petitioner contends that counsel must be deemed to have been constructively absent under the *Cronic* standard because, rather than representing Petitioner's best interest, counsel advised the trial court that the incorrect SIR had been used to calculate the sentencing guidelines. In support of his contention, Petitioner directs the Court to the following excerpt from the resentencing hearing:

> Very short[ly] after having pronounced sentence and having expressed some surprise at the leniency of those guidelines as attached, counsel approached the Court and indicated that this appears to be an SIR for the lesser offense, and that an SIR for the greater offense was not attached.

(S. Tr. II at 4.) Petitioner argues that the court's reference to "counsel" in the above passage must have referred to defense counsel as the party who initiated contact with the court.

Petitioner's claim does not fall within the rubric of *Cronic*. Petitioner at all times was represented by counsel, and Petitioner cannot show either of the other types of presumptively prejudicial representation outlined in *Bell*, 533 U.S. at 695-96. *See also Henness*, 644 F.3d at 323-24.

In addition, regardless of the test used, Petitioner fails entirely to demonstrate that counsel's performance fell below the requisite standard of reasonableness. It is not at all clear that a defense attorney acts improperly by informing the court of a legal defect in the proceedings. The Michigan Rules of Professional Conduct expressly bar a lawyer from making a false statement or from failing "to correct a false statement of material fact . . . ." MICH. R. PROF. CONDUCT 3.3(a)(1). The rules also bar any lawyer from failing "to disclose to a tribunal controlling legal authority known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel . . . ." MICH. R. PROF. CONDUCT 3.3(a)(2). Under these provisions, if the lawyer is aware that the wrong sentencing guidelines are being used, he arguably is required by the Rules of Professional Conduct to reveal the error to the court. *Id.* Conduct mandated by the Rules of Professional Conduct clearly cannot support a claim of ineffective assistance of counsel.

Further, as a factual matter, Petitioner has failed entirely to demonstrate that defense counsel brought the erroneous SIR to the attention of the state trial court. According to the hearing transcript, the court merely referred to "counsel," not "defense counsel." It not only is possible, but also probable, that the prosecutor was responsible for bringing the error before the court. Petitioner has wholly failed to present any factual basis on which this Court could conclude that defense counsel was ineffective. As a consequence, Petitioner fails to demonstrate that the state court's

rejection of his claim constituted an unreasonable application of clearly established Supreme Court precedent.

### Recommended Disposition

For the foregoing reasons, I respectfully recommend that the habeas corpus petition be denied.


Date:  March 28, 2012                                       /s/ Ellen S. Carmody
                                                            ELLEN S. CARMODY
                                                            United States Magistrate Judge


### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).